IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

TREVOR B. CLANTON, JAMES C. EVANS,
JOEY D. SINGLETON, CHRISTOPHER M.
HARRISON, CHAD E. STANLEY, SMITH FAMILY
COMPANIES, INC., and SMITH COMPANIES TRADING, LLC          PLAINTIFFS

VERSUS                                         CIVIL ACTION NO. 2:10-cv-57KS-MTP

NORTH PACIFIC GROUP, INC., an Oregon Corporation,
f/k/a North Pacific Lumber Company; EDWARD
HOSTMAN, INC., Receiver for North Pacific Group, Inc.;
FOREST CITY TRADING GROUP, LLC; and SOUTHERN
MISSISSIPPI TRADING, LLC                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss **[#7]** or, in the Alternative, to Transfer **[#9]** filed on behalf of or joined by **[#14]** all defendants. The court, having reviewed the motions, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion to dismiss and the motion to join are well taken and should be granted and that the motion to transfer should be denied. The court specifically finds as follows:

## FACTUAL BACKGROUND

The individual plaintiffs, Trevor Clanton, James Evans, Joey Singleton, Chris Harrison, and Chad Stanley (the "individual plaintiffs") work as lumber traders in Waynesboro, Mississippi, and each is a resident citizen of the State of Mississippi. *See* Exhibit "A," Amended Complaint at ¶¶ 1-5. The individual plaintiffs were formerly

employed by North Pacific Group, Inc. ("NPG"), at NPG's office in Waynesboro. *Id.* at ¶ 16. At the commencement of their employment with NPG, each Individual plaintiff signed an employment agreement. *Id.* at ¶ 17. These contracts were negotiated, executed, and performed in Mississippi. *Id.* at ¶ 16. During the course of their employment, the individual plaintiffs purchased and sold certain products for and on behalf of NPG in several counties in Mississippi. *Id.*

Covenants not to compete were included in the employment agreements entered into by the individual plaintiffs. *Id.* at ¶ 18. The plaintiffs filed this action on March 16, 2010, seeking to have the covenants not to compete declared unenforceable as to the individual plaintiffs as a matter of law alleging they are over-broad and do not seek to protect a legitimate business interest; under the doctrine of unclean hands; and as a result of NPG's alleged breach of the employment agreements and fraudulent representations in the inducement of the contracts. *Id* at ¶¶ 25-27.

The individual plaintiffs claim that their employment relationship with NPG dramatically changed during the course of their employment. *Id.* at ¶ 19. The individual plaintiffs' allegations include a change in the methodologies of payment to employees, a hostile work environment, and a hindrance in doing business. *Id.* They allege that after filing their Original Complaint, they realized that many of the negative changes in their employment relationship occurred as a result of ongoing operations of NPG after NPG was placed in receivership.

On January 20, 2010, the United States District Court for the District of Oregon entered an order pursuant to 28 U.S.C. § 754 appointing defendant Edward Hostman, Inc. as the receiver (the "Receiver") for defendant North Pacific Group, f/k/a North

Pacific Lumber Company as a result of a motion filed by NPG's largest creditor, Wells Fargo Capital Finance, Inc. The Receiver was ordered "to take possession of, control, manage, and operate the businesses and properties of NPG . . . for the purpose of preserving and protecting the Collateral and for the purpose of liquidating the Collateral and using the proceeds thereof to pay the obligations of NPG, . . . to Wells Fargo Bank, Bank of America, and CIT in accordance with the terms of [the] order."

The Oregon District Court's Docket shows more than 140 entries in connection with the Receiver's execution of its duties pursuant to the Order. The defendants contend that pursuant to the Order and applicable law , the Oregon District Court retains exclusive jurisdiction over the Receiver's activities and collection efforts, approves the Receiver's proposed disposition of NPG's businesses and properties, and approves the Receiver's monthly statements.

Approximately one week after the Receiver was appointed, Smith Family Companies, Inc. and/or Smith Companies Trading, LLC ("Smith") sought to hire the individual plaintiffs by making a written offer of employment. Smith also submitted a Letter of Intent in the Receivership Case seeking to acquire the assets of NPG's Southern Trading Division, which employed the individual plaintiffs. Smith's offer was ultimately not accepted.

Instead, on February 26, 2010, NPG entered into an Asset Purchase Agreement ("APA") with defendant Southern Mississippi Trading, LLC ("SMT"). The APA provided for SMT to purchase the assets of NPG's Southern Trading Division including "all non-competition and non-solicitation covenants with Employees [of NPG] . . .." The purchase price of the APA, including the non-competition agreements, was based on a

formula which included an initial up-front payment from SMT to NPG of $425,000.

After learning of Smith's offer of employment to the plaintiffs, the Receiver issued letters to Smith seeking to prevent Smith from hiring the individual plaintiffs. After filing this suit, the individual plaintiffs accepted employment with Smith. On March 15, 2010, the Receiver learned that some of the plaintiffs subject to non-compete covenants had accepted employment with Smith. The individual plaintiffs assert, however, that they have not engaged in lumber trading with customers they personally traded with during their employment with NPG.

However, after learning of the employment of the individual plaintiffs with Smith, SMT demanded a downward adjustment to the up-front payment in the APA from $425,000 to $125,000. On March 17, 2010, the Receiver, on behalf of NPG, executed an amendment to the APA which excluded the individual plaintiffs from the contracts purchased by SMT and reduced SMT's up-front payment by $300,000 as demanded by SMT.

The plaintiffs filed their original Complaint in this court on March 16, 2010, seeking a declaration that the covenants not to compete in their employment agreements are not enforceable and claiming unspecified damages from NPG's alleged breach of their employment agreements. The plaintiffs filed an Amended Complaint on March 17, adding the Receiver and SMT as defendants. The plaintiffs assert that venue is proper in this court based on diversity of the parties asserting that "the facts and circumstances giving rise to this lawsuit occurred and accrued in the Southern District of Mississippi."

The defendants assert that the individual plaintiffs' improper actions in accepting

employment with Smith resulted in direct loss of $300,000 to the creditors of NPG and that the Receiver is solely responsible for pursuing recovery of these damages and controlling the assets of NPG.  The defendants further contend that the Oregon Court has jurisdiction to administer the distribution of any recovery obtained by the Receiver to the creditors of NPG.  As a result, the defendants have moved for dismissal alleging improper venue or, in the alternative, for transfer to the Oregon District Court.

The Federal Rules of Civil Procedure authorize a court to dismiss an action where the defendant establishes that venue is not proper in that court.  Fed.R.Civ.P. 12(b)(3).  *See also Jelec USA, Inc. v. Safety Controls, Inc.*, 2006 U.S. Dist LEXIS 83941 (S.D. Tex. 2006).  "When an objection to venue has been raised, it is the Plaintiff's burden to establish that venue is proper in the judicial district in which the action has been brought." *Transamerica Corp. v. Trans-American Leasing Corp.*, 670 F.Supp. 1089, 1090, 5 U.S.P.Q.2d 1352, 1353 (D.Mass.1987); 15 Wright, Miller & Cooper, Federal Practice & Procedure § 3826 at 259 (1986)(cited with approval by *Advanced Dynamics Corp. v. Mitech Corp.* 729 F.Supp. 519 (N.D.Tex. 1990); and *Perez v. Pan American Life Ins. Co.* 70 F.3d 1268 (5th Cir. 1995)).

The defendants assert that venue is improper in the Southern District of Mississippi pursuant to Fed. R. Civ. P. 12(b)(3) because defendant Edward Hostman, Inc. is an appointed receiver and the plaintiffs should have sought leave from the appointing federal court located in Oregon prior to filing this matter.  Defendant Hostman was appointed receiver pursuant to 28 U.S.C § 754.  The plaintiffs admit that § 754 vests the defendant with jurisdiction and control of the property of NPG, but they argue the statute also provides that the defendant "may be sued with respect thereto as

provided in section 959 of this title." *See* 28 U.S.C. §§ 754, 959(a).

The seminal case in this arena is *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). In *Barton*, the Supreme Court ruled that the common law barred suits against receivers in courts other than the court charged with the administration of the estate. 104 U.S. at 127. Thus, before suit is brought against a receiver, leave of the court by which the trustee was appointed must be obtained. In that regard, the Court stated:

> So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control.

*Id.* at 134. *Barton* actually involved the appointment of a receiver by a state court but § 754 has been universally applied in the bankruptcy context as well.

A limited exception to the rule announced in *Barton* was codified in 28 U.S.C. § 959(a). *See, e.g., Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240-41 (6th Cir.1993) (describing 959(a) exception as "limited"). Section 959(a) provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." The purpose of this provision (and its predecessor) "was to make receivers appointed by federal courts amenable to suit without any need to secure the permission of the appointing court; that is, to place receivers on the same plane as owners of the property with regard to their liability to be sued for acts done during the management or operation of that property." *Eddy v. Lafayette*, 163 U.S. 456 (1896). The primary issue in this case is whether the acts giving rise to the dispute were part of "carrying on

business" as that term has been defined and clarified.

The United States Court of Appeals for the First Circuit has a more recent case analyzing the § 959(a) exception, *Muratore v. Darr* 375 F.3d 140 (1st Cir. 2004). The court will quote *Muratore* at length as it is the best compilation of cases discussing this issue:

> There is little First Circuit case law on this issue, but courts elsewhere have interpreted "acts or transactions in carrying on business connected with" the bankruptcy estate to mean acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise. *See, e.g., Melvin v. Klein*, 49 Misc.2d 24, 266 N.Y.S.2d 533, 536-37 (N.Y. Spec. Term 1965). In interpreting section 959(a)'s predecessor, 28 U.S.C. § 125, Learned Hand, writing for the Second Circuit, concluded that "[m]erely to hold matters in statu quo; to mark time, as it were; to do only what is necessary to hold the assets intact; such activities" did not constitute carrying on business. *Vass v. Conron Bros. Co.*, 59 F.2d 969, 971 (2d Cir.1932). Rather, section 959(a) "is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store.' " *Carter*, 220 F.3d at 1254 (quoting *Lebovits v. Scheffel* ( *In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir.1996)).
>
> For example, section 959(a) applied where a trustee continued the business of a debtor in operating a railroad, and the trustee had been sued in his representative capacity for damages for use of another's tracks, *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 138, 66 S.Ct. 937, 90 L.Ed. 1132 (1946) (applying predecessor to section 959(a)), and in a case for wrongful death and injury resulting to a member of the public in a grade crossing accident, *Valdes v. Feliciano*, 267 F.2d 91, 94-95 (1st Cir.1959). Also, the exception has been held to apply to an employee's claims arising from injuries caused by overwork at a railroad company operated by the trustee and the trustee's withholding of an employee's pension. *Haberern v. Lehigh and New England Ry., Co.*, 554 F.2d 581, 585 (3d Cir.1981).
>
> On the other hand, courts have concluded that merely holding and collecting the assets intact, *Vass*, 59 F.2d at 971, collecting and liquidating the assets of the debtor, *Austrian v. Williams*, 216 F.2d 278, 285 (2d

> Cir.1954), and taking steps for the care and preservation of the property, *U. & I., Inc. v. Fitzgerald*, (*In the Matter of Campbell*), 13 B.R. 974, 976 (Bankr.D.Idaho 1981), *In re Kalb & Berger Mfg.* Co., 165 F. 895, 896-97 (2d Cir.1908), do not constitute "carrying on business." Likewise, actions taken in the mere continuous administration of property under order of the court do not constitute an "act" or "transaction" in carrying on business connected with the estate. *Field v. Kansas City Refining Co.*, 9 F.2d 213, 216 (8th Cir.1925); *see also In re DeLorean Motor Co.*, 991 F.2d at 1241 (action against trustee and representatives alleging abuse of process and malicious prosecution in relation to prosecution of fraudulent conveyance action is a suit for actions of trustee wholly unrelated to carrying on debtor's business because trustee merely collected, took steps to preserve, and/or held assets, as well as performed other aspects of administering and liquidating estate); *Carter*, 220 F.3d at 1254.

375 F.3d at 144-45.

The plaintiffs contend that even a cursory review of the facts alleged in the Amended Complaint reveals that the plaintiffs' claims are based on the individual plaintiffs' ongoing employment with NPG and the business operations of NPG. For example, the individual plaintiffs allege NPG "made numerous representations both verbally and in its employment contract to Plaintiffs pertaining to training, marketing information, support, skills, business protocols, business practices and employee cooperation which are, were, and remain false, misleading, and in breach of the employment agreement and [NPG's] duty of good faith and fair dealing with Plaintiffs." *See* Amended Complaint at ¶17.

The individual plaintiffs also allege NPG "hindered Plaintiffs' businesses which were developed solely by them by (1) allowing other employees inappropriate access to Plaintiffs' suppliers, making it impossible for them to meet the needs of their buyers; and (2) forcing Plaintiffs to incur personal expense through improper trade practices." *Id.* at ¶20. According to the plaintiffs, all of these actions involve the ongoing business

operations of NPG and the individual employee plaintiffs' employment relationship with NPG.  As it relates to the Receiver, the plaintiffs are challenging the Receiver's conduct in operating NPG's "business" in an ongoing or usual manner, as distinguished from actions taken solely in winding up an enterprise or supervising a bankruptcy reorganization or liquidation.

The Receiver responds that it was never operating NPG's business in an "ongoing or usual manner" such that the § 959(a) exception applies in this case.  The Receiver contends that at all times following appointment, it was administering the NPG estate, not "carrying on business."  The court agrees.

In fact, Smith, one of the plaintiffs, offered employment to the individual plaintiffs who were employed in NPG's Southern Division five days after the Order appointing the Receiver was entered.  Smith recognized that NPG would no longer be a going concern in its offer of employment when Phil Smith, CEO of the Smith Companies, stated, "I regret to see what has happened to your company, but from those ashes will emerge a new opportunity."  Smith then attempted to acquire the assets of NPG's Southern Trading Division.

The Oregon docket is replete with evidence that the Receiver is liquidating the assets of NPG and not attempting to operate it as a going concern.  In fact, the assets of the Southern Trading Division, which the individual plaintiffs worked for, was sold to SMT just over one month after the Receiver was appointed.  An interim offer for those same assets was promulgated by Smith and rejected by the Receiver before that sale.

This finding is in complete conformity with the Order of the Oregon District Court which directed the Receiver "to take possession of, control, manage, and operate the

businesses and properties of NPG . . . for the purpose of preserving and protecting the Collateral and for the purpose of liquidating the Collateral and using the proceeds thereof to pay the obligations of NPG, . . . to Wells Fargo Bank, Bank of America, and CIT in accordance with the terms of [the] order."

Clearly, the only purpose allowed by the Order for the Receiver to operate the business of NPG is to preserve the collateral so that it may be liquidated to satisfy debts owed NPG's creditors. There is no allowance in the Order for the Receiver to reorganize NPG to continue as a going concern. The stated authority of the Receivership is to liquidate the assets of NPG and pay the creditors. The § 959(a) exception to the § 754 requirement that the court appointing the Receiver must be given notice of and then its permission for litigation not filed before it to proceed does not apply to the facts of this case. The plaintiffs have not sought leave of the Oregon District Court to proceed with this litigation, thus this court lacks subject-matter jurisdiction. *See Muratore*, 375 F.3d at 143.

The defendants have moved to dismiss this action. In the alternative, the defendants have requested that this court refer the case to the Oregon District Court under 28 U.S.C. § 1404. This court, however, does not have this option. Rule 12(h)(3) of the Federal Rules of Civil Procedure states that a court "shall dismiss" an action over which it lacks subject-matter jurisdiction. Failure of the plaintiffs to obtain leave of the Oregon District Court to file this action deprives this court of subject-matter jurisdiction and it must be dismissed.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss **[#7]** and the joinder by all defendants **[#14]** are both Granted and that the Alternative Motion

to Transfer **[#9]** is Denied, and this matter is dismissed without prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions are denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED, this the 22nd day of July, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE